UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERKS OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 2 0 2011 ★

BROOKLYN OFFICE

-------------------------------------------------------X

SHAWAN BROWN,

              Petitioner,

    -against-

SUPERINTENDENT JOSEPH T. SMITH,

              Respondent.

-------------------------------------------------------X

**REPORT & RECOMMENDATION**
**09 CV 4522 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

    Shawan Brown petitions this Court *pro se* seeking a writ of habeas corpus under 28 U.S.C. §2254. The Honorable Dora Lizette Irizarry, United States District Judge, referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

    According to testimony adduced at trial, in April and June of 2005, petitioner went to the homes of Pauline Roach, Theodore Sexton, Israel Rogers, and Linda Wright falsely claiming to be a city employee, stating that they owed money to the city, and that he would shut off their water or shut them out of their homes if they did not personally pay him. Tr. 34, 40, 71, 81, 120, 122, 160, 165.[1] Petitioner spent 20 or more minutes in the presence of each victim, in some cases driving with them to a bank or ATM machine to withdraw money. Tr. 48, 129, 136, 166-167, 169-170. All but one of the victims gave petitioner money. Tr. 47-48, 83, 136, 166-167.

    The four victims separately contacted police. Tr. 53, 99, 144, 174. Based on the nature of

---

[1] "Tr." refers to the transcript of petitioner's trial in New York Supreme Court, Kings County, held February 10-15, 2006. See docket entries 4-4 at 108-133, 4-5, 4-6, 4-7.



the crimes and police officers' familiarity with petitioner's past offenses, petitioner became a suspect. Wade Tr. 9-10.[2] Thus, on June 3, 2005, Detective Michael McFadden of the Brooklyn Robbery Squad went to the home of Pauline Roach and showed her a photo array including a photograph of petitioner. Wade Tr. 17, 24. Ms. Roach selected petitioner's photograph from the array as the person who came to her house demanding money. Wade Tr. 26.

Detective McFadden next contacted petitioner's parole officer to determine when petitioner was due to report. Wade Tr. 27. When petitioner arrived to meet with his parole officer on June 8, 2005, Detective McFadden handcuffed him and took him to the main command of the Brooklyn Robbery Squad where he was placed in a cell. Tr. 244. Petitioner remained in the cell for four hours, after which petitioner provided two written statements: one statement related to the robbery of Linda Wright and the other, the robbery of Israel Rogers. Tr. 255-57, 260. Prior to petitioner's statements, he was given his Miranda warnings, both orally and in writing. Tr. 250.

The same day, Detective McFadden conducted a lineup. Tr. 261. The lineup consisted of petitioner and five fillers from a nearby men's shelter. Tr. 262. Detective McFadden testified that fillers from the men's shelter who were similar to petitioner in terms of race, age, weight, and facial hair were selected for the lineup. Tr. 271-272. In addition, the lineup participants were seated to lessen differences in height, and wore baseball caps to conceal their hair or lack of hair. Tr. 272-273. Petitioner was allowed to pick his position in the lineup. Tr. 263.

Despite police efforts to find fillers of similar appearance to petitioner, the fillers were all

---

[2] "Wade Tr." refers to petitioner's combined Huntley, Dunaway, Wade hearing on February 7-8, 2006. Docket entries 4-3, 4-4 at 1-107. A Huntley hearing is held to determine whether a confession was voluntary. See People v. Huntley, 204 N.E.2d 179 (1965). A Dunaway hearing is held to determine whether a voluntary confession obtained following an arrest without probable cause should be suppressed. See Dunaway v. New York, 442 U.S. 200 (1979). Finally, a Wade hearing is held to determine whether identification procedures were unduly suggestive. See United States v. Wade, 388 U.S. 218 (1967).

younger than petitioner (30, 34, 40, 40 and 44, against petitioner's 53). Tr. 297-299; docket entry 4-1 at 35. The fillers were also all taller than petitioner (all except one being over six feet, compared to petitioner's five feet seven inches) and with the exception of one filler, all weighed less than petitioner (180, 180, 215, 220, and 230 compared to petitioner's 225 pounds). Tr. 297-299; docket entries 4-1 at 35 and 7-1 at 10.

Theodore Sexton, Pauline Roach, and Linda Wright, plus Anne Wiggins, who told police something similar happened to her but whose complaint did not lead to a charge against plaintiff, viewed the lineup. Wade Tr. 107; Tr. 267, 374. When they arrived at the precinct, the witnesses were placed in the same room but in an area of the building where they could not see petitioner or the fillers. Tr. 319. The witnesses were individually escorted to view the lineup. Tr. 319. After viewing the lineup, the witnesses were all escorted to a third room. Tr. 319-320. Theodore Sexton, Pauline Roach, and Linda Wright selected petitioner from the lineup. Wade Tr. 61-62, 65. Anne Wiggins did not identify petitioner from the lineup. Tr. 292.

After the lineup, Detective McFadden arrested petitioner. Tr. 274. Petitioner was indicted on June 14, 2005 on the following charges: a scheme to defraud in the second degree; burglary in the second degree; burglary in the third degree; criminal trespass in the second degree; grand larceny in the fourth degree; petit larceny; attempted petit larceny; criminal impersonation in the second degree; and unlawful imprisonment in the second degree. Docket entry 4 at 2-3. Petitioner testified before the Grand Jury. Id. at 51-81. Among other things, petitioner stated that police had told him what to write in the statements, that he only provided the statements because he did not want to argue with the police or get hurt, and that he felt coerced. Id. at 68-71.

On August 17, 2005, a second lineup was conducted. Tr. 274. By court order, it was

double-blind: Detective McFadden was not in the room where the witnesses viewed the lineup. Tr. 324. Petitioner's attorney, Melissa Kansas, was present during the lineup. Tr. 323. As before, five fillers from the men's shelter were brought in, and petitioner was allowed to select his position in the lineup. Tr. 275. As before, petitioner was older than the fillers (27, 32, 38, 40, 44 compared to petitioner's 53) and there were disparities in height and weight. Tr. 301; docket entry 4-1 at 35. Israel Rogers, along with his daughter, Shemeka Witherspoon,[3] viewed the lineup. Tr. 279. Israel Rogers picked petitioner from the lineup, Tr. 142-3, but Shemeka Witherspoon selected a filler. Wade Tr. 65.

## I.    Huntley/Dunaway/Wade Hearing

On February 7 and 8, 2006, the Supreme Court of New York, Kings County held a combined Huntley, Dunaway, Wade hearing, and defense counsel moved to suppress the lineup identifications on the basis that they were unduly suggestive. Wade Tr. 175. Petitioner did not testify at the hearing. Wade Tr. 184. With respect to the first lineup, defense counsel argued that it was improper for witnesses to be kept in the same room together prior to viewing the lineup, because the witness that viewed the photo array, Pauline Roach, could have tainted the identification made by the other witnesses. Wade Tr. 174-175. Defense counsel also argued that the lineups were unduly suggestive as petitioner was the oldest person by ten years as well as the shortest person. Wade Tr. 175-76.

The court declined to suppress the lineups or the written statements. Wade Tr. 196. The court noted with respect to the procedures used in the first lineup, that while the witnesses were in the same room prior to viewing the lineup, they were kept separate after viewing the lineup. Wade Tr. 194-195. The court also noted that the police ensured that witnesses could not see the

---

[3] Shemeka Witherspoon had accompanied her father and petitioner to the bank the day of the robbery. Tr. 135.

fillers as they were brought in. <u>Wade</u> Tr. 194-195. The court found nothing improper in the procedures used in the second lineup, noting that it was double blind. <u>Wade</u> Tr. 196. With respect to the composition of the lineups, the court noted that the participants were "wearing hats; they're all seated; and no one person seems to be sticking out." <u>Wade</u> Tr. 195. The court further noted that lineup participants were "remarkably similar-looking individuals." <u>Wade</u> Tr. 195. Moreover, that Shemeka Witherspoom and Ann Wiggins could not make positive identifications at the lineups supported the Court's finding that the lineups were not unduly suggestive. <u>Wade</u> Tr. 195.

The court also found that petitioner was given his Miranda warnings, that petitioner understood the warnings, and that he voluntarily spoke with the detectives. <u>Wade</u> Tr. 193. The court found that there was nothing illegal or improper in the way the statements were obtained. <u>Wade</u> Tr. 193. Finally, the court concluded that there was probable cause to arrest petitioner. <u>Wade</u> Tr. 193.

## II.    Petitioner's Trial

Petitioner's jury trial commenced on February 10, 2006; petitioner did not testify at trial. Petitioner's two written statements were admitted into evidence (as People's Exhibit 14 and 15), as were photographs depicting the lineups (as People's Exhibit 12A and 16A). Tr. 254, 259, 264, 277. Pauline Roach, Theodore Sexton, Israel Rogers, and Linda Wright all identified petitioner in court as the person who came to their house demanding money. Tr. 35, 72, 120, 160-161. Their prior identification of petitioner at the lineup was also introduced. Tr. 264. Pauline Roach testified that when she viewed the lineup, she "recognized [petitioner] because this is [the] guy that came to my house. None other." Tr. 51. Linda Wright testified at trial when asked if she recognized anybody at the lineup: "Oh, sure. Oh, yes." Tr. 173-174. Israel Rogers testified that

when he looked at the lineup: "Like they all had different numbers and I seen the man." Tr. 143.

On summation, defense counsel argued again that the identification evidence was tainted due to the procedure used in the first lineup and the composition of both lineups. Tr. 365. With respect to petitioner's arrest, Miranda warnings, and statements, defense counsel argued only that petitioner had been "locked in a cage in a police precinct for four hours," that police fed petitioner enough details about the crimes to obtain a statement from him, which petitioner wrote only so that they would stop accusing him. Tr. 376-377.

On February 16, 2006, the jury convicted petitioner of a scheme to defraud in the second degree, burglary in the second degree, burglary in the third degree, grand larceny in the fourth degree, petit larceny, attempted petit larceny, criminal impersonation in the second degree, and unlawful imprisonment in the second degree. Tr. 476-481.

On March 14, 2006, the trial court adjudicated petitioner to be a persistent violent felony offender. Sentencing Tr. 2, 4.[4] After discussing the matter with his attorney, petitioner acknowledged the prior violent felony convictions. Sentencing Tr. 4. In addition, when asked if he sought to challenge the constitutionality of those prior convictions, petitioner stated that he did not. Sentencing Tr. 4. However, defense counsel objected that the people's pre-sentencing memorandum contained facts for the court to consider in enhancing petitioner's sentence, which counsel suggested violated petitioner's rights under Apprendi v. New Jersey, 530 U.S. 466 (2000). Sentencing Tr. 5.

---

[4] "Sentencing Tr." refers to the transcript of the sentencing which took place on March 14, 2006. Petitioner's prior violent felony convictions included attempted burglary in the second degree in 1994, and burglary in the second degree in 1993. Sentencing Tr. 3-4.

## PROCEDURAL HISTORY

### I.    Direct Appeal

On March 19, 2007, petitioner appealed his conviction to the New York Supreme Court,

Appellate Division, Second Department. See docket entry 4-1 at 1-95. The appeal raised the trial

court's refusal to suppress the lineups, and failure to make a finding that there was an

independent source for the witnesses' in-court identifications. Id. at 8. On January 22, 2008, the

Appellate Division affirmed the conviction, People v. Brown, 849 N.Y.S.2d 639 (App. Div.

2008) and stated:

> "The photographs taken of the two lineups reflect that the fillers
> sufficiently resembled the defendant. Moreover, any differences in
> weight and height were eliminated by having the participants in the
> lineup seated, holding a card with a number in front of them, and
> any differences in hair style were eliminated by having the
> participants wear identical baseball caps. Further, the age
> disparities between the defendant and the fillers were not so
> apparent as to single out the defendant."

Id. (internal citations omitted). The court concluded that the procedures used in the first lineup

were proper. Id. (citations omitted). In addition, because it found the lineups were not unduly

suggestive, the Appellate Division stated there was no need for an independent source hearing.

Id. On April 21, 2008, the New York Court of Appeals denied petitioner leave to appeal the

Appellate Division's decision. People v. Brown, 889 N.E.2d 84 (N.Y. 2008).

### II.    Writ of Error Coram Nobis

On December 9, 2008, petitioner filed a *pro se* application for a writ of error coram nobis

in the Appellate Division claiming ineffective assistance of both trial and appellate counsel.

Docket entry 1 at 3. Petitioner alleged that counsel failed to raise that his arrest had been without

a warrant, his statements to police had been coerced, and that he had been beaten by police.

Docket entry 4-2 at 31.[5]  Petitioner argued that as a result, the lineup identifications and his statements should have been suppressed. Id.  Petitioner also argued that he was not allowed to testify at the pretrial hearings or at trial in violation of his Sixth Amendment rights, and that the pretrial hearing court had failed to make findings of fact and conclusions of law with respect to his Huntley and Dunaway claims. Id.

On March 31, 2009, the Appellate Division denied petitioner's application stating that petitioner had "failed to establish that he was denied the effective assistance of appellate counsel" and affirmed the judgment of the Supreme Court, Kings County. People v. Brown, 875 N.Y.S.2d 808 (App. Div. 2009).[6]  Petitioner sought leave to appeal to the New York Court of Appeals and requested that the court review petitioner's sentence as a persistent violent felony offender, and re-sentence him. Docket entry 7-1 at 50-1.  Petitioner raised that his rights under Apprendi had been violated because the trial court, and not a jury had determined that petitioner was a persistent violent felony offender. Id. at 51.  On September 17, 2009, the New York Court of Appeals denied petitioner's application. People v. Brown, 916 N.E.2d 439 (N.Y. 2009).

## III.   The Instant Petition

Petitioner raises three claims in the instant petition: 1) the lineup identifications should have been suppressed; 2) he had ineffective assistance of trial and appellate counsel; and 3) his

---

[5] Petitioner's coram nobis application raised facts not previously presented, including that: 1) when he refused to accompany Detective McFadden to the precinct from the parole office, he "was physically thrown against the wall, hand cuffed, searched, his money and cell phone was taken from him;" 2) at the precinct, prior to being read his Miranda rights, he was "physically abused and/or assaulted by McFadden and his partner, that is, by hitting the Petitioner on the right side of his face, of which, became severally swollen, partly closing his right eye;" and 3) after his arrest following the first lineup, he was taken to Central Booking but due to his "swollen face, and commencing to have a seizure, he was rejected, not admitted, and was taken to the hospital, where he stayed over-night until the next day." Docket entry 4-2 at 3-5.

[6] The court did not address petitioner's ineffective assistance of trial counsel claim as "a *coram nobis* application is not the appropriate vehicle for asserting a claim of ineffective assistance of trial counsel ... because a *coram nobis* addresses appellate errors, not trial errors." Congelosi v. Miller, 611 F.Supp.2d 274, 307 (W.D.N.Y. 2009) (citing Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001)).

sentencing as a persistent violent felony offender violated his rights under <u>Apprendi</u>. Docket entry 1 at 4.

## DISCUSSION

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has held that a state court decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established Federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> The Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Id.</u> at 410

9

(emphasis in original).

Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (citation omitted). The Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

## II.    Exhaustion and Procedural Bar

A federal court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless a petitioner has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). A petitioner has exhausted all his available state court remedies when he has "fairly presented" his federal constitutional claim to the highest state court and informed the state court of the factual and legal bases for the federal claim. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982). However, a claim may be denied on the merits, notwithstanding the failure to exhaust. 28 U.S.C. § 2254(b)(2).

If a state prisoner fails to exhaust a ground and that claim can no longer be raised, that claim is procedurally barred from habeas review. Moreover, federal courts have no authority to review state court decisions that rest upon an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The "independent and adequate state ground" doctrine ensures "that the States' interest in correcting their own mistakes is respected in all federal habeas cases" and that habeas petitioners do not "avoid the exhaustion requirement by defaulting their federal claims in state court." Id. at 732. Where there is a procedural bar because a claim was not properly raised and can no longer be raised, a federal court is precluded from reviewing the merits of the claim unless the prisoner can demonstrate "cause" for the default and "actual prejudice" resulting from it, or that the failure to consider the claim will result in a miscarriage of justice, such as the conviction of one who is "actually innocent." Id. at 750; Murray v. Carrier, 477 U.S. 478, 496 (1986).

## III.    Petitioner's Claims

### A.    Lineup Identification Evidence

Petitioner claims that the lineup identification evidence should have been suppressed as both lineups were unduly suggestive, and the procedures used in the first lineup tainted the lineup. Docket entry 1 at 4; docket entry 4-1 at 3. Although petitioner properly exhausted this claim, see Brown, 849 N.Y.S.2d at 639, it should be denied, as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

Federal law regarding the introduction of eyewitness identification evidence at criminal trials is well established. Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009). Defendants have the due process right to be free from identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v

11

United States, 390 U.S. 377, 384 (1968).

The Court employs a two-stage, sequential inquiry to determine whether a defendant's due process right to be free from an unduly suggestive identification has been violated. Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). First, the Court must determine whether the procedure by which the initial identification was obtained "unduly and unnecessarily suggested that the defendant was the perpetrator." Id. "This is a fairly permissive standard, and a court applying this standard to the facts of a specific case is ... entitled to significant 'leeway' when we review its decision for reasonableness." Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d 196, 202 (2d Cir. 2010) (citations and internal quotation marks omitted).

Second, even if the initial identification was impermissibly suggestive, the admission of the evidence will nevertheless satisfy constitutional standards if the identification was independently reliable. Raheem, 257 F.3d at 133. In assessing the reliability of a pretrial identification, the Court considers: 1) the opportunity of the witness to view the suspect at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the perpetrator; 4) the level of certainty demonstrated by the witness; and 5) the length of time between the crime and the identification. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). "None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed 'in light of the totality of the circumstances.'" Brisco, 565 F.3d at 89 (quoting Raheem, 257 F.3d at 135).

### 1.    Lineup Composition

The Appellate Division found the composition of the lineups were not impermissibly suggestive. There is no requirement that there be uniformity of appearance in a lineup. Arroyo v.

Conway, No. 08-CV-03887 (DLI), 2010 WL 3950734, at *6 (E.D.N.Y. Oct. 7, 2010)[7] (citing Tavarez v. LeFevre, 649 F.Supp 526, 530 (S.D.N.Y. 1986)). Rather, the Second Circuit has held that "the principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness, so stood out from all of the others as to suggest to an identifying witness that that person was more likely to be the culprit." United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (citations and internal quotation marks omitted). See also Hartley v. Senkowski, No. Civ 90 0395, 1992 WL 58766, at *3 (E.D.N.Y. March 18, 1992) (rejecting petitioner's claim of suggestiveness when petitioner and the fillers appeared to be of the same age, weight and height). Here, the Appellate Division concluded, after viewing the photographs of the lineups that petitioner was not singled out, and that the fillers "sufficiently resembled the defendant." Brown, 47 A.D.3d at 827. The state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

### 2. Procedures Used

The Appellate Division also found that the procedures used in the June 8, 2005 lineup were "proper." Id. Petitioner argues that the witnesses who were held in the same room before viewing the lineup may have talked and that Pauline Roach, who had viewed his photograph in the photo array may have influenced the other witnesses. Docket entry 4-1 at 37. Such conjecture does not render a lineup identification impermissibly suggestive. See Taylor v. Kuhlmann, 36 F.Supp.2d 534, 550 n.12 (E.D.N.Y. 1999) (finding petitioner's assertion that witnesses may have communicated with one another "pure conjecture" and contradicted by a record that police kept witnesses apart and prevented them from speaking). The state court's decision regarding the lineup procedure was not contrary to or an unreasonably application of

---

[7] The Clerk of Court is directed to send petitioner copies of the attached cases available only on electronic databases.

clearly established Federal law.

### 3.  Independent Reliability

Even if the lineup identifications had been tainted, which is not the case here, petitioner's claim would still fail because the identifications were independently reliable. Applying the factors identified in Biggers, 409 U.S. at 199-200, each of the four victims had ample opportunity to view petitioner, based on time spent with petitioner and their proximity to petitioner; their degree of attention would have been high, given petitioner claimed to represent the city and due to the subject matter being discussed (a debt that was owned by the victims); and three of the four victims identified petitioner in court using language connoting certainty. See Tr. 51, 143, 173-174. In addition, the victims viewed a lineup only two to four months after the crime occurred.

### 4.  Independent Source Hearing

Petitioner says that he is entitled to a new trial as there was no independent source hearing as to any of the in-court identifications. Docket entry 7 at 17. As the Appellate Division found that the lineups were not unduly suggestive, there was no need for an independent source hearing. Brown, 47 A.D.3d at 827. "An independent source hearing is necessary only when a hearing court has determined that pre-trial identification procedures were unduly suggestive." Williams v. Artus, 691 F.Supp.2d 515, 529 (S.D.N.Y. 2010) (denying petitioner's claim for habeas relief on the ground that he was entitled to an independent source hearing) (citing United States v. DiTommaso, 817 F.2d 201, 213 (2d Cir. 1987); United States v. Archibald, 734 F.2d 938, 941 (2d Cir. 1984); and Gossett v. Henderson, No. 87 Civ. 5878 (CSH), 1991 WL 135601, at *4 (S.D.N.Y. July 18, 1991)). Accordingly, petitioner claim regarding an independent source hearing should be denied as the state court decision was not contrary to or an unreasonable

application of clearly established Federal law.

## B.    Ineffective Assistance of Trial and Appellate Counsel

Petitioner claims that he was denied his Sixth Amendment right to effective assistance of *both* trial and appellate counsel[8] because: 1) counsel failed to raise his warrantless arrest, beating by police, and forced statements to preclude his statements and the lineup identifications; 2) he was denied the right to testify at the pretrial hearing and at trial; and 3) the pretrial hearing court failed to make findings of fact and conclusions of law with respect to his Huntley and Dunaway claims. Docket entry 1 at 4.

In Strickland v. Washington, 466 U.S. 668 (1984), the U.S. Supreme Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. Accordingly, a defendant bringing such a claim must show: 1) "counsel's performance was deficient;" and 2) "the deficient performance prejudiced the defense." Id. at 687. With respect to the first prong, counsel's performance was deficient if it "fell below an objective standard of reasonableness." Id. at 688.

Given the "countless ways to provide effective assistance in any given case" and "the tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," there is a "strong presumption" that counsel rendered adequate assistance. Id. at 689-90. A court is "required not simply to give [counsel] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [defendant's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S.Ct. 1388, 1407 (2011) (internal citations and

---

[8] Respondent does not address petitioner's ineffective assistance of trial counsel claim; only petitioner's ineffective assistance of appellate counsel claim is addressed. See docket entry 4 at 22-30.

quotation marks omitted).

## 1.  Trial Counsel

As an initial matter, petitioner's claim that he received ineffective assistance of trial counsel is unexhausted. Petitioner included an ineffective assistance of trial counsel claim in his coram nobis application, however "a *coram nobis* application is not the appropriate procedural vehicle for asserting a claim of ineffective assistance of trial counsel." Congelosi v. Miller, 611 F.Supp.2d 274, 307 (W.D.N.Y. 2009) (citing Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001)). "[T]he *coram nobis* addresses appellate errors, not trial errors." Congelosi, 611 F.Supp.2d at 307.

Petitioner's unexhausted ineffective assistance of trial counsel claim is likely to be procedurally barred in part because even if he were to make a motion to vacate the judgment under New York Criminal Procedure Law ("CPL") § 440.10, it would likely be denied pursuant to CPL § 440.10(2)(c) ("the court must deny a motion to vacate a judgment when … [a]lthough sufficient facts appear on the record … [defendant unjustifiably failed] … to raise such ground or issue upon an appeal …"). See Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (concluding that petitioner's claim was procedurally barred for purposes of federal habeas review, where it was also barred under § 440.10(2)(c)); Figgins v. Conway, No. 09-CV-0680 (MAT), 2011 WL 2039573, at *5 (W.D.N.Y. May 25, 2011) (petitioner's contentions that were available on the record, such as trial counsel's failure to object to jury instructions, were procedurally barred).[9]

Although it may not be apparent on the record in every case whether trial counsel was ineffective, see Figueroa v. Heath, No. 10-CV-0121 (JFB), 2011 WL 1838781, at * 5 (E.D.N.Y.

---

[9] The Second Circuit has explained that "the purpose of [the state] rule is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal …or could readily have raised it on appeal but failed to do so." Sweet, 353 F.3d at 139 (citations and internal quotation marks omitted).

May 13, 2011), here petitioner's claims regarding his Huntley and Dunaway hearings and that his arrest had been without a warrant clearly rely on facts available in the record. See Tr. 193, 244-273. Petitioner has not shown cause for his failure to raise these claims and actual prejudice, or that the failure to consider these claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750.[10] Therefore, petitioner's ineffective assistance of trial counsel claim is unexhausted and procedurally barred in part.

Petitioner's remaining ineffective assistance of trial counsel claims (those that are arguably not apparent on the record) should be dismissed under 28 U.S.C. § 2254(b)(2) as they are without merit. Figgins, 2011 WL 2039573, at *5 (citing Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir. 2002) and Smith v. Texas, 550 U.S. 297, 324 (2007)). Petitioner is incorrect that the court failed to make findings of fact and conclusions of law with respect to his Huntley and Dunaway issues. The record shows that the court explicitly found that there was nothing illegal or improper in the way the statements were obtained and that there had been probable cause to arrest petitioner. Tr. 193. Petitioner also claims that he was prevented from testifying before and at trial. However, the record reflects that the trial judge told petitioner that it was ultimately petitioner's decision whether or not to testify. Tr. 351-2. Finally, petitioner claims that counsel should have presented evidence that police beat petitioner and that he had a swollen face during the first lineup. But petitioner's claim is contradicted by his own testimony before the Grand Jury, the overall tenor of which was that he cooperated with police in fear of being beaten, not because he was beaten. For example, petitioner testified that he told police: "I'll sign anything you want, because I know when I get to court I'm going to tell the truth," docket entry 4-2 at 69, and when police allegedly denied him the right to see a lawyer before the first lineup:

---

[10] Petitioner makes only generalized assertions that he did not have a fair trial. See docket entry 7 at 24.

"I didn't feel like having my head bent down between my legs ..." Id. at 77. Petitioner also testified that he told staff at a hospital he was taken to for a heart condition the night following the lineup: "[T]hey are going to hurt me up in this place," not that he had been hurt. Id.[11] Petitioner's testimony thus undermines his instant claims. Accordingly, although unexhausted (but arguably not procedurally barred), petitioner's ineffective assistance of trial counsel claim should be denied.

### 2.    Appellate Counsel

Petitioner's ineffective assistance of appellate counsel claim should be denied as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law. In particular, in citing to Jones v. Barnes, 463 U.S. 745 (1983), the Appellate Division recognized that it is not necessary that counsel raise every colorable claim, but rather that counsel may choose among potential issues and advance only those that are most promising. Petitioner's contention that appellate counsel failed to advance a number of arguments does not establish that counsel was ineffective. Strategic choices, if made after thorough investigation, "are virtually unchallengeable." Strickland, 466 U.S. at 690.

Moreover, appellate counsel could not have argued that petitioner had been beaten and that therefore the identification evidence and statements should have been precluded, because, as respondent notes, "she was constrained by the record of the pretrial hearing during which no such detail was elicited." Docket entry 4-2 at 107. Petitioner's remaining claims with respect to appellate counsel's ineffectiveness (warrantless arrest, Huntley and Dunaway claims, and right to testify) are without merit, as discussed above. Accordingly, as the state court decision was not

[11] Although petitioner's testimony included a reference to an injury to his nose, that he "got the marks," and that he didn't want to get "more bruised up," docket entry 4-2 at 70-71, 76, petitioner may have been referencing injuries he had suffered in the past.

contrary to or an unreasonable application of clearly established Federal law, petitioner's ineffective assistance of appellate counsel claim should be denied.

### C.     Apprendi

Petitioner claims that his sentence as a persistent violent felony offender, pursuant to New York Penal Law ("NYPL") § 70.08, violated the rule established by the U.S. Supreme Court in Apprendi. Docket entry 1 at 4.     Apprendi held: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Petitioner also cites to the Second Circuit's decision in Besser v. Walsh, 601 F.3d 163 (2d Cir. 2010) which invalidated New York's persistent felony offender statute (as opposed to New York's persistent *violent* felony offender statute, which petitioner was convicted under), finding that New York courts unreasonably applied clearly established Federal law in holding otherwise.

Respondent is correct that petitioner has not given the state courts an opportunity to consider the merits of this claim, [12] and so it remains unexhausted.[13] Even if it were exhausted,

_____

[12] The Court of Appeals could not address petitioner's Apprendi claim because under CPL § 450.90, the court was limited to petitioner's claim for ineffective assistance of appellate counsel, not a direct challenge to petitioner's sentence. Apprendi was not raised on direct appeal or on a motion. Even if petitioner is claiming that appellate counsel had been ineffective in failing to raise Apprendi, that would not properly raise the Apprendi claim. In Turner v. Artuz, 262 F.3d 118, 123 (2001), the Second Circuit held that "the rejection of ineffective assistance of counsel claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims." Accordingly, the court in Turner concluded that petitioner had not exhausted the underlying claims by raising them in the context of ineffective assistance of appellate counsel on a writ of error coram nobis to the Appellate Division. Id.

[13] Petitioner's unexhausted Apprendi claim cannot be "deemed" exhausted due to a procedural bar. Docket entry 4 at 32. Contrary to respondent's assertion that "[b]ecause defendant did not raise an Apprendi challenge at sentencing, the claim is unpreserved and a 440.20 motion is unavailable to him," docket entry 4 at 32, the record shows that trial counsel noted an objection on the basis of Apprendi. See Sentencing Tr. 5. Moreover, although petitioner failed to raise Apprendi in his direct appeal and may no longer do so, see New York Court Rules § 500.20, he may still be able to do so pursuant to CPL § 440.20. See Saracina v. Artus, No. 04-CV-521S, 2007 WL 2859722, at *9 (W.D.N.Y. Sept. 26, 2007) (concluding that petitioner's ineffective assistance of trial counsel claim based on

petitioner's <u>Apprendi</u> claim would be denied on the merits. First, <u>Besser</u> is no longer good law. The Second Circuit's *en banc* decision in <u>Portalatin v. Graham</u>, 624 F.3d 69 (2010) vacated that decision. <u>Portalatin</u> held that New York courts had not unreasonably applied clearly established Federal law in holding that the persistent felony offender statute does not run afoul of the Sixth Amendment. <u>Id.</u> at 93. This was true even though the statute allows a judge to take "into consideration the 'history and character' of the defendant and the 'nature and circumstances of his criminal conduct.'" <u>Id.</u> at 89.

By contrast, petitioner was sentenced under NYPL § 70.08, New York's persistent *violent* felony offender statute. Under NYPL § 70.08, a state court judge must impose an enhanced sentence when he or she finds that a person has been convicted of a violent felony offense, after having previously been convicted of two or more violent felonies. Thus, unlike NYPL § 70.10, § 70.08 does not require any fact finding by a judge "[o]ther than the fact of a prior conviction." <u>Apprendi</u>, 530 U.S. at 490. Indeed, "federal district courts considering the issue have unanimously concluded that the New York persistent violent felony offender statute is constitutional." <u>McGraw v. Lee</u>, No. 09 Civ 8541(DLC)(FM), 2011 WL 1682633, at *7 (S.D.N.Y. April 27, 2011) (citing cases); <u>see also Stapleton v. Graham</u>, No. 09-CV-0382 (ENV)(LB), 2011 WL 1748734, at * 14 (E.D.N.Y. May 6, 2011) ("Where an enhanced sentence is based solely on a defendant's recidivism, he is not entitled to a jury trial on that issue"); <u>Antinuche v. Zon</u>, No. 1:05-cv-01246-ENV, 2010 WL 2035795, at * 11 (E.D.N.Y. May 20, 2010) ("the PVFO statute falls squarely within *Apprendi*'s exception for sentence enhancements based solely on prior convictions"). <u>And see Severino v. Phillips</u>, No. 05 Civ. 475(DAB), 2008

---

counsel's failure to object to the imposition of an enhanced sentence was unexhausted but was not procedurally barred, because a 440.20 motion, unlike a 440.10 motion, cannot be denied on the basis that the claim could have been raised on appeal).

WL 4067421, at *15 (S.D.N.Y. Aug. 25, 2008) (finding petitioner's unexhausted <u>Apprendi</u> claim meritless). Accordingly, petitioner's unexhausted <u>Apprendi</u> claim should be denied under 28 U.S.C. § 2254(b)(2) as it is without merit.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; <u>see</u> <u>Lozada v. United States</u>, 107 F.3d 1011, 1017 (2d Cir. 1997), <u>abrogated on other grounds</u>, <u>United States v. Perez</u>, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability); <u>see</u> <u>also</u> <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112-13 (2d Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 873 (2000). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: October 20, 2011
Brooklyn, New York